<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

ELBERT CALHOUN, CUTRICE CALHOUN,   :
MALACHI CALHOUN, ELBERT CALHOUN IV :
JALEEL CALHOUN, and JAVAUN CALHOUN :
                                      :
     Plaintiffs,                      :
                                        :
v.                                     :     No. 3:14-cv-158 (VAB)
                                        :
THE PROVIDENCE MUTUAL FIRE       :
INSURANCE COMPANY                :
                                        :
     Defendant                   :

<u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs Elbert and Cutrice Calhoun, along with their six children, (the "Calhouns")

have sued the Defendant, Providence Mutual Fire Insurance Company ("Providence Mutual"),

alleging eight claims of breach of contract, bad faith, and negligence.  Pls. Am. Compl., ECF No.

15.

Count One of the Amended Complaint alleges that Providence Mutual breached its

contract with the Calhouns by denying their insurance claim relating to mold damage at the

insured premises.  Count Two alleges that Providence Mutual denied the claim in bad faith by

failing to report the presence of mold to the Calhouns, even though Providence Mutual knew that

mold was present in their home.  Counts Three through Eight of the Amended Complaint allege

that Providence Mutual was negligent in not reporting the presence of mold to the Calhouns and,

as a result, caused the Calhouns to be exposed to mold and suffer potentially permanent

respiratory illness and pain.  Providence Mutual moved for summary judgment, claiming that

denial of coverage was appropriate because the stated loss was not covered by the terms of the

applicable insurance policy.  For the reasons set forth below, the Defendant's Motion for

Summary Judgment [ECF No. 27] is **GRANTED**.

I.    **FACTUAL BACKGROUND**[1]

Elbert Calhoun and Cutrice Calhoun had a homeowner's insurance policy ("the Policy")

with the Providence Mutual Fire Insurance Company ("Providence Mutual"), for 138 Canton

Street in West Haven, Connecticut (the "insured premises") from May 5, 2011 through May 5,

2012.

On October 3, 2011, the Calhouns reported a claim to Providence Mutual relating to a

boiler at the insured premises.  Providence Mutual sent an independent adjuster, Ron Kirkpatrick

of LeMarche Adjusters, to investigate the claim.  While inspecting the boiler in the basement of

the insured premises, Mr. Kirkpatrick noted the presence of what appeared to be mold on the

wall and ceiling near the boiler.  In his report for the claim related to the boiler, Mr. Kirkpatrick

noted the following in the Adverse Risk Conditions section of the report: "there is evidence of

water intrusion into the partially finished basement … there is also visible mold on some wall

surfaces."  Def. 56(a)(1) Statement ¶ 3, ECF No. 27-2. The Calhouns assert that neither Mr.

Kirkpatrick nor Providence Mutual informed Plaintiffs of the mold at the time of the boiler

inspection.

In or about April of 2012, after the Calhouns allegedly discovered the presence of mold

in their home for the first time, they made a claim for mold damage at the insured premises.

Providence Mutual again sent Mr. Kirkpatrick to investigate the Calhouns' claim, this time

related to the mold damage.  After inspecting the property, Mr. Kirkpatrick compiled his findings

in a letter dated May 2, 2012.  In his letter to the Calhouns, Mr. Kirkpatrick explained that the

---

[1] All of the facts below, derived from the Amended Complaint [ECF No. 15] and Providence Mutual's undisputed Local Rule 56(a) Statement, exhibits, affidavits, and supplemental filings, are undisputed unless otherwise noted.

mold was caused by a pair of leaky faucets, and that it appeared to him that the faucets had been

leaking for an extended period of time. *See* Kirkpatrick Letter, ECF No. 27-7 (Def. Exh. 4).

Providence Mutual subsequently denied the mold claim because the mold was not caused by a

"Peril Insured Against" as required by the Policy and because the insured failed to take

reasonable measures to protect the property from further damage at the time of the underlying

loss. *Id*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the court is satisfied that there is, "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The burden of establishing the nonexistence of a "genuine issue" is on the party

moving for summary judgment, and the inferences and ambiguities to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475

U.S. 574, 587 (1986). When the moving party has carried its burden under Rule 56(a), the

nonmoving party must produce specific facts showing that there is a genuine issue for trial.

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Only disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment. *Matsushita*, 475 U.S. at 587. Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no "genuine issue for trial," and the motion for summary judgment should be granted in

favor of the moving party. *Id*.

## III.   DISCUSSION

Providence Mutual argues that the unambiguous terms of the Policy required the denial

of the Calhouns' insurance claim for mold. Providence Mutual also argues that, as a matter of

law, it did not owe the Calhouns a duty to inform them of its initial discovery of mold at the insured premises.  The Calhouns disagree, arguing instead that their loss is covered under the Policy and that Providence Mutual acted in bad faith and with negligence by failing to notify them about its previous discovery of mold at the insured premises.

### A.  Breach of Contract Claim

Providence Mutual argues that the Calhouns' insurance claim for mold is not covered under the unambiguous language of the Policy.  The Court agrees.

"It is the function of the court to construe the provisions of the contract of insurance." *Gottesman v. Aetna Ins. Co.,* 177 Conn. 631, 634 (1979).  The "[i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." *Aetna Life & Casualty Co. v. Bulaong,* 218 Conn. 51, 58 (1991).  "The determinative question is the intent of the parties … as disclosed by the provisions of the policy…  The policy words must be accorded their natural and ordinary meaning ... [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Imperial Casualty & Indemnity Co. v. State,* 246 Conn. 313, 324–25 (1998).

A necessary predicate to this rule of construction, however, is a "determination that the terms of the insurance policy are indeed ambiguous.... The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." *Kelly v. Figueiredo,* 223 Conn. 31, 37 (1992).  When the language of the policy is clear and unambiguous, the court is bound to apply the natural and ordinary meaning of the words employed.  *See Schultz v. Hartford Fire Ins. Co.,* 213 Conn. 696, 702-03 (1990).  A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there. *See Fidelity Trust Co. v. BVD Associates,* 196 Conn. 270, 282 (1985).

4

The Calhouns' insurance policy is unambiguous and the Court will apply the natural and ordinary meaning of the words.  As noted previously, the Calhouns had a general homeowner's insurance policy with Providence Mutual from May of 2011 to May of 2012.  In addition, the Calhouns' insurance policy contained specific provisions providing limited coverage for fungi, wet or dry rot, or bacteria ("Limited Fungi Endorsement").  Under the Limited Fungi Endorsement, Providence Mutual agreed to pay up to $10,000 for loss "caused by 'fungi',[2] wet or dry rot, or bacteria."[3]  Limited Fungi Endorsement, ECF No. 32-4 (Pls. Exh. 4).  This coverage is applicable only if "such loss or costs are a result of a Peril Insured Against that occur[ed] during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred."  *Id*.

The general provisions of the insurance contract between the Calhouns and the Providence Mutual contained the following language in paragraph 2.c.(5) of the Homeowner's Insurance Policy:

> Section I – Perils Insured Against
>> A. Coverage A – Dwelling and Coverage B – Other Structures
>>> (5) Mold, fungus or wet rot [is excluded]. However, we do insure for loss caused by mold, fungus, or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or stream from within:
>>>> (a) A plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or a household appliance on the "residence premises"; or
>>>> (b) A storm drain, or water, stream or sewer pipes, off the "residence premises".

---

[2] The Calhouns' general Homeowner's Insurance Policy defines  "fungi" as "any type or form of fungus including mold or mildew, and any mycotoxins, spores, scents, or by-products produce or released by fungi." Pls. Exh. 4.

[3] The Limited Fungi Endorsement also covers up to $10,000 towards the "cost to remove 'fungi'…from property covered under Section 1- Property Coverages"; "the cost to tear out and place any part of the building or other covered property as needed to gain access to the 'fungi'"; and "the cost of testing of air or property to confirm the absence, presence or level of fungi." Pls. Exh. 4.

Homeowner's Insurance Policy, Section I, ECF No. 27-4 (Def. Exh. 1).

The Limited Fungi Endorsement replaces the exclusion language found above in paragraph 2.c.(5) and instead provides that Providence Mutual will not insure for loss "caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years *unless* such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all 'insureds' *and* is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure."  Limited Fungi Endorsement, ECF No. 33 (Pls. Corrected Exh. 4 at 2) (emphasis added).  Through the addition of this language, the Limited Fungi Endorsement modifies the language of the general contract by changing the circumstances where water or moisture can cause a covered loss.  The above language is unambiguous.  The Limited Fungi Endorsement makes clear that Providence Mutual will provide coverage to its insured only if (a) both the cause of the damage and the resulting damage are unknown to all "insureds," and (b) the seepage, leakage, condensation and/or damage is "hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure." *Id.*

It is undisputed that the damage at issue here, namely, the mold infestation, was caused by a combination of "moisture" and a "historic seepage of water through the basement floor of the insured premises." Def. 56(a)(1) Statement at ¶ 6, ECF No. 27-2.  While the Calhouns dispute that the water seepage and the mold were known to them, they do not claim that the resulting mold damage was "hidden" under the Limited Fungi Endorsement cited above. Even if the Calhouns are correct that Mr. Kirkpatrick, the independent adjuster, failed to mention the discovery of mold in 2011, they do not dispute the fact that the mold discovered by Mr. Kirkpatrick was visible on the walls of the basement.   In their Memorandum in Opposition to

this motion, the Calhouns themselves refer to Mr. Kirkpatrick's October 2011 report, where he states that "[t]here is visible mold on some wall surfaces." Pls. Mem. in Opp. 2, ECF No. 31. In order for a claim to be covered under the Limited Fungi Endorsement, the mold must be both unknown and hidden. The mold at issue here was not hidden. Thus, the mold is not a loss covered under the unambiguous terms of the Policy and the Calhouns' breach of contract claim must fail.

### B. Bad Faith Claim

Providence Mutual argues that the Calhouns' claim of bad faith also must fail because the insurance company had a legitimate reason for denying the Calhouns' claim. The Court agrees.

In Connecticut, as in many jurisdictions, the "duty of good faith and fair dealing is a covenant implied into a contract," meaning that "every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co*., 308 Conn. 760, 794 (2013). For a plaintiff to have a cognizable claim of breach of the implied covenant of good faith and fair dealing, "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) (internal citation omitted). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id*. In sum, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." *Id*. In the insurance context, the threshold for a bad faith claim

is wrongful denial. *Capstone*, 308 Conn. at 798 ("bad faith is not actionable apart from a wrongful denial of a benefit under the policy").

Here, Providence Mutual had a legitimate reason to deny the claim. Under the clear and ambiguous language of the Policy, the Calhouns' loss for mold was not covered. This loss was not caused by a "Peril Insured Against." Indeed, the denial letter sent by Providence Mutual to the Calhouns in May of 2012 specifically mentions the provisions of the Limited Fungi Endorsement, and explains that the coverage provided for in the Limited Fungi Endorsement only applies when such "loss or costs are the rules of a Peril Insured Against," requiring that the cause of the mold and the mold itself must be both "unknown to the insured and hidden within the walls or the ceilings or beneath the floors or above the ceiling of the structure." Pls. Corrected Exh. 4. The denial letter further explains that because the "mold formation on the basement paneled wall, bottom of the sink base cabinet and under the bathroom floor was clearly visible" at the time of the inspection, the claim was not covered under the policy. Def. Exh. 4 at 2. Accordingly, Providence Mutual did not wrongfully deny a benefit under the policy, and the Calhouns' bad faith claim must fail as a matter of law.

### C.  Negligence Claim

Finally, Providence Mutual argues that it did not owe a duty to inform the Calhouns about the presence of mold at the insured premises. The Court agrees.

A party "may be liable in negligence for the breach of duty which arises out of a contractual relationship." *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 688 (1986). Unless a particular conflict between the rules of contract and tort requires otherwise, a plaintiff may choose to proceed in contract, tort, or both. *Stowe v. Smith*, 184 Conn. 194, 199 (1981). "Negligence may be the outgrowth of precedent contractual relationship, but it may also

arise in situation where there is no thought of any such underlying relationship… Where there is a precedent relationship, all that is necessary to furnish a basis for an action of negligence is that there be present the elements necessary to establish such a cause of action, and if that is so, that that relationship is one of contract is no sound reason why the action should not lie." *Dean v. Hershowitz*, 119 Conn. 398, 408 (1935); *See, e.g., Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559, 579 (1995) ("The [plaintiffs] were not barred from pursuing a negligence claim solely because they also might have had a breach of contract claim"); *Johnson v. Flammia,* 169 Conn. 491, 496 (1975) ("A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship").

The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. *RK Constructors, Inc. v. Fusco Corp*., 231 Conn. 381, 384 (1994). The existence of a duty is a question of law. *Id.*; *Gazo v. Stamford*, 255 Conn. 245, 250 (2001). If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant. *Sic v. Nunan*, 307 Conn. 399, 406-07 (2012). Likewise, only if a duty is found to exist will the trier of fact determine whether the duty has been violated. *See Gazo*, 255 Conn. at 250.

This Court has been unable to identify any Connecticut Supreme Court authority determining whether an insurer has a duty to inform the insured when it discovers the presence of mold in the covered property beyond the scope of the homeowner's insurance coverage. "In the absence of a decision from a state's highest court, a federal court sitting in diversity must predict how that state's highest court would resolve a question of state law, giving due regard to the rulings of other state courts, and taking into account relevant case law from other jurisdictions." *Pinto v. Allstate Ins. Co*., 221 F.3d 394, 402 (2d Cir. 2000). It is the duty of

federal courts "to ascertain from all available data what the state law is and apply it." *West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 237 (1940). While the Connecticut Supreme Court has never interpreted the precise legal question at issue here, it has clearly developed a standard for how to determine the existence of such a legal duty for purposes of a negligence claim.

Under Connecticut law, "the test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Mazurek v. Great American Ins. Co.,* 284 Conn. 16, 29 (2007). The first part of the test involves the question of foreseeability, and the second part invokes the question of policy. *Murillo v. Seymour Ambulance Ass'n, Inc.,* 264 Conn. 474, 479 (2003). In order to impose a legal duty, both parts of this test must be satisfied. *See Munn v. Hotchkiss Sch*., 795 F.3d 324, 331 (2d Cir. 2015) ("Under Connecticut law, foreseeability of harm alone is not determinative of duties in tort and the imposition of a duty of care also implicates questions of public policy"); *Murillo*, 264 Conn. at 479-80 ("A simple conclusion that the harm to the plaintiff was foreseeable cannot by itself mandate a determination that a legal duty exists… A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection"); *RK Constructors, Inc. v. Fusco Corp*., 231 Conn. 381, 387 (1994) ("Although it may have been foreseeable to [the defendant] that by causing an accident to the plaintiff's employee, the plaintiff's workers' compensation premiums would increase, this fact alone does not conclude our inquiry. We must

proceed to make the further policy determination of whether [the defendant's] responsibility for its negligent conduct should extend to these particular consequences and this particular plaintiff").

Turning to the first part of this two-part test, under the circumstances of the present case, it is not clear that the Calhouns' injuries were foreseeable, at least in such a way as to impute liability to Providence Mutual.  Providence Mutual sent Ron Kirkpatrick, an independent adjuster, to inspect the boiler at the Calhouns' home, the insured premises.  While Mr. Kirkpatrick reported that the "[r]isk is maintained in fair condition and there is evidence of water intrusion into the partially finished basement of the risk... [t]here is also visible mold on some wall surfaces," Kirkpatrick Report 2, ECF No. 27-6 (Def. Exhibit 3), it is not clear why he should foresee the specific health issues that resulted for the Calhouns, serious respiratory illness, particularly when this risk was visible.

In any event, even if the risk was foreseeable, in order to determine whether a duty exists, the court must also look to public policy considerations.  The Connecticut Supreme Court has recognized four factors to be considered in determining the extent of a legal duty as a matter of public policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. *Murillo*, 264 Conn. at 480.  In light of these four factors, the record does not sufficiently support the imposition of a new legal duty under Connecticut law.

This first factor weighs against the creation of a new legal duty on the part of Providence Mutual in this case.  Providence Mutual retained Mr. Kirkpatrick, to complete an investigation at the Calhouns' home regarding their boiler.  He was not retained to examine mold or the attendant

risks that might arise from the presence of mold.  When Providence Mutual reviewed Mr.

Kirkpatrick's written report about the boiler inspection, their "normal expectation" was that they

were responsible for evaluating the applicable insurance coverage in connection with the

particular claim under review, not for assessing the health risks to the insured of a potential mold

infestation.  Similarly, the "normal expectation" of the Calhouns in this situation was to receive a

response from Providence Mutual regarding their boiler-related insurance claim, not to receive

updates about other problems affecting their home.  Although the Calhouns may have

understandably expected Providence Mutual to be more forthcoming about its observation of

mold in their home, particularly in light of the harm that could result from a mold infestation,

Providence Mutual's agreed-upon role in relation to the Calhouns was to investigate and

determine applicable insurance coverage in connection with their home.

The next factor invites this Court to consider the public policy of encouraging certain

activities on the part of the insurance company while giving due weight to safety concerns

regarding the insured.  *Id*.  There are serious safety concerns, given the potential physical harm

that can result from extended exposure to toxic mold.  However, imposing a legal duty in this

context would affect the relationships between insurers and their agents in investigating

insurance-related claims by increasing potential liability for insurers, whenever insurance-related

investigations disclose problems outside the scope of the underlying claim.  Similarly, the

imposition of a duty in this circumstance would also undermine public policy goals of avoiding

increased litigation.  *Id*.

The decisions of other jurisdictions in similar circumstances also suggest that public

policy does not support the imposition of a new duty in this case.  Several other jurisdictions

have specifically examined whether there should be a legal duty on the part of insurers to inform

policyholders of the known presence of mold in the insured premises.  The majority of these courts have declined to recognize such a legal duty in this context.  *See*, *e.g. Haney v. Fire Ins. Exch.*, 277 S.W.3d 789, 791 (Mo. App. 2009) (declining to impose a duty to notify plaintiffs regarding mold infestation because defendant insurer did not possess any "right or obligation to control the activity which presents the danger of injury"); *GuideOne Mut. Ins. Co. v. Hunter*, 650 S.E.2d 424, 427 (Ga. App. 2007) (granting summary judgment to defendant insurer based on absence of evidence that defendant "undertook to do anything more than inspect the property in discharge of its obligation" to defray mold-related costs); *Sanchez v. Allstate Ins. Co.*, 2010 WL 3998040, at *1 (N.M. Ct. App. Feb. 3, 2010) (finding no fiduciary duty of disclosure where toxic mold loss was not covered by the applicable homeowner's insurance policy).  Similarly, in the context of life insurance, other jurisdictions have repeatedly declined to impose a requirement that insurers inform policyholders of life-threatening health conditions discovered in connection with insurance-related investigations.  *See, e.g. Deramus v. Jackson Nat. Life Ins. Co.*, 92 F.3d 274, 279 (5th Cir. 1996) ("while it is true that [insurer] had a duty to conduct its affairs reasonably and with due care, in this case that duty did not require [insurer] to protect plaintiff and her husband from harm from any force(s) that [insurer] did not set into motion"); *Eaton v. Cont'l Gen. Ins. Co.*, 59 F. App'x 719 (6th Cir. 2003) (declining to impose a duty on the part of defendant insurers to inform plaintiffs of positive HIV test discovered in connection with insurance application); *Petrosky v. Brasner*, 718 N.Y.S.2d 340 (N.Y. App. 2001) (no liability for defendant insurer for failure to inform decedent of abnormal electrocardiogram (EKG) in absence of evidence that defendant affirmatively misled decedent or foreseeably induced him to forego necessary treatment).

Finally, when determining the existence of a duty in other contexts, Connecticut courts have frequently declined to find a duty to warn on the part of service providers beyond the scope of the agreed-upon service. *See, e.g. Neuhaus v. DeCholnoky,* 280 Conn. 190 (2006) (obstetrician who delivered premature baby did not have a duty to warn parents of ongoing health risks from baby's diagnosis); *Roach v. Ivari Intern. Centers*, 77 Conn. App. 93 (2003) (hairpiece installer had no duty to warn customer of itching, discomfort or hair breakage); *Jarmie v. Troncale,* 306 Conn. 578 (2012) (physician did not have a duty to warn a non-patient of the safety risks from patient's operation of a motor vehicle); *Deed v. Walgreen Co*., 50 Conn. Supp. 339 (2007) (pharmacist had no duty to notify customer that they were being overmedicated). Consistent with this precedent, this Court declines to find that Providence Mutual owed a duty to inform the Calhouns about the presence of mold at the insured premises.

## IV.    CONCLUSION

Based on the undisputed facts viewed in the light most favorable to the Calhouns, their claims of breach of contract, bad faith and negligence against Providence Mutual cannot prevail, and Providence Mutual is entitled to judgment as a matter of law.  Thus, Providence Mutual's motion for summary judgment is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut, this 2nd day of Sepetmber 2016.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE